UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| In re<br><br>KENNETH HOWARD MACWAY, and<br>JOYCE LAMBERT MACWAY,<br><br>                    Debtors.<br><br>KENNETH HOWARD MACWAY,<br><br>                    Appellant,<br>  v.<br>UNITED STATES TRUSTEE,<br><br>                  Appellee. | Case No. 3:12-cv-00519-MMD-WGC<br><br>ORDER |

**I.     SUMMARY**

This appeal by Appellant Kenneth Howard Macway ("Macway") challenges the denial of a bankruptcy discharge by the United States Bankruptcy Court for the District of Nevada. (Dkt. no. 6.) Appellee United States Trustee ("U.S. Trustee") brought two denial of discharge claims pursuant to, respectively, 11 U.S.C. § 727(a)(3) and 11 U.S.C. § 727(a)(5). Following trial, the bankruptcy court entered judgment granting the U.S. Trustee's claim pursuant to § 727(a)(3), and denying discharge under that section, but finding that the U.S. trustee failed to satisfy its burden under § 727(a)(5). For the reasons set out below, the bankruptcy court's Order is affirmed.

## II. BACKGROUND

The following factual background is derived largely from the findings of fact entered by the bankruptcy court regarding denial of Macway's discharge. Macway does not contest the following facts.

Macway and his wife filed for voluntary chapter 7 bankruptcy on March 25, 2010. (Dkt. no. 6, Ex. A at 2.) The U.S. Trustee filed the Complaint for Denial of Discharge ("Complaint") alleging two claims for denial of discharge, pursuant to 11 U.S.C. § 727(a)(3) and § 727(a)(5) respectively. (*Id.*) After two days of trial, the bankruptcy court granted the U.S. Trustee's claim for denial of discharge pursuant to 11 U.S.C. § 727(a)(3) and denied the U.S. Trustee's claim for denial of discharge pursuant to 11 U.S.C. § 727(a)(5). (*Id.* at 3-4.)

Macway has an MBA, keeps detailed personal records, and was the Manager of Technology & Engineering Evaluation for the Kerr-McGee Corporation for fourteen (14) years where he developed a program to manage and track annual capital expenditures. (*Id.* at 5.) He is also an "advantage gambler" who "gambles when the odds are in his favor, to obtain money, 'comps' from a casino, and entry into tournaments where prizes are available." (*Id.* at 6.) When gambling, Macway sometimes "rat-holed' chips, which means pocketing them so that they are not countable, and sometimes removed his own player tracking card and used his wife's instead. (*Id.*) From 2002 to 2009, Macway started and ran a gambling partnership called "Advantage Play Combined Syndicate" ("Syndicate"). (*Id.*) Macway received approximately $495,000 from approximately thirty (30) investors and lenders for Macway to gamble on behalf of the Syndicate so that the profits could be shared. (*Id.*) A lot of the money given to Macway for the Syndicate was in cash. (*Id.* at 7.)

Macway also withdrew money from his retirement account, which held $513,708 after June 1, 2005, and dropped to only $5,000 as of December 31, 2006. (*Id.* at 8.) This withdrawn money was comingled with Syndicate money and not placed in any of Macway's bank accounts. (*Id.*)

The money for the Syndicate was not kept in any bank account. (*Id.* at 7-8.) Macway could not produce original records of the money invested or loaned for the Syndicate, though he was able to provide a "recreated list of members including amounts invested or loaned". (*Id.* at 7.) Macway produced few contemporaneously kept records, did not produce a gaming diary or log, had no records of any repayments to the Syndicate, had no records of money reinvested, and did not produce any W-2Gs or 1099s. (*Id.* at 7-8.) Macway had a computer failure in 2006, and subsequent failures, which resulted in records being lost. (*Id.* at 8.)

### III. DISCUSSION

11 U.S.C. § 727(a)(3) states that the bankruptcy court shall grant the debtor a discharge unless "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]"

Macway argues that the bankruptcy court "erred" in denying discharge pursuant to § 727(a)(3) because: (1) Macway "provided sufficient documents to satisfy his chapter 7 trustee, his investors and his creditors" as evidenced by the fact that these parties did not testify or take adversarial action (dkt. no. 6 at 4, 6); (2) the U.S. Trustee "presented no comparable syndicate player to testify as to how records should be kept" (*id.* at 6); (3) there was no proof that Macway's "recreated list of members including amounts invested or loaned" was inaccurate (*id.* at 8); (4) the "win-loss" records kept by the casinos and provided by Macway should not have been deemed "less credible" on the basis that they were not maintained by Macway (*id.* at 9); and (5) the bankruptcy court's denial of the U.S. Trustee's claim pursuant to § 727(a)(5) was sufficient to defeat the U.S. Trustee's claim under § 727(a)(3) as well (*id.* at 9-11).

///

///

### A. Legal Standard

"[T]he Ninth Circuit standard of review of a judgment on an objection to discharge is that: (1) the court's determinations of the historical facts are reviewed for clear error; (2) the selection of the applicable legal rules under § 727 is reviewed de novo; and (3) the application of the facts to those rules requiring the exercise of judgments about values animating the rules is reviewed de novo." *Searles v. Riley (In re Searles)*, 317 B.R. 368, 373 (B.A.P. 9th Cir. 1999) (*quoting Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 729–30 (B.A.P. 9th Cir. 1999)).

"Because discharge is a matter generally left to the sound discretion of the bankruptcy judge, [courts] disturb this determination only if [they] find a gross abuse of discretion." *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1296 (9th Cir. 1994) (citation omitted). Accordingly, district courts "defer to the bankruptcy court's conclusion . . . unless its factual findings are clearly erroneous or it applies the incorrect legal standard." *Id.* "When there are two permissible views of the evidence, the trial judge's choice between them cannot be clearly erroneous." *Baldwin Builders v. Gould (In re Baldwin Builders)*, 232 B.R. 406, 410 (B.A.P. 9th Cir. 1999) (*citing Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)).

A prima facie case under § 727(a)(3) is established by showing that: "(1) the debtor failed to maintain and preserve adequate records; and (2) this failure rendered it impossible to ascertain the debtor's financial condition and material business transactions." *Hussain v. Malik (In re Hussain)*, 508 B.R. 417, 423-24 (B.A.P. 9th Cir. 2014) (*citing Caneva v. Sun Cmtys. Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008)). Once a prima facie showing is made, the burden shifts to the debtor to "justify the inadequacy or nonexistence of records." *Id.* (*citing Cox v. Lansdowne (In re Cox)*, 904 F.2d 1399, 1401-02 (9th Cir. 1990)).

### B. Analysis

Macway argues that the bankruptcy court should not have denied discharge because Macway's "chapter 7 trustee, his investors and his creditors" did not take

4

adversarial action against him or testify against him and thus "[o]ne must assume that they did not dispute [his] filings." (Dkt. no. 6 at 4, 5-6.) Though not entirely clear, this appears to be an argument that the bankruptcy court applied the wrong legal standard. The Court reviews the bankruptcy court's use of the rules *de novo* and disagrees. There is no explicit requirement that a party advancing a § 727(a)(3) claim prove that an investor or creditor actually attempted to ascertain the debtor's financial activity and failed to do so, nor does Macway provide any legal authority to support such a requirement.

Further, "[t]he purpose of [§ 717(a)(3)] is to make the privilege of discharge *dependent* on a true presentation of the debtor's financial affairs." *Cox v. Cox (In re Cox)*, 904 F.2d 1399, 1401 (9th Cir. 1990) (emphasis added and internal quotation marks and citation omitted). The obligation is thus on the debtor seeking that privilege to maintain proper records in order to accurately present his financial affairs. Here, Macway sought the privilege of a discharge in bankruptcy court, and the U.S. Trustee brought a claim asserting Macway's records were inadequate under § 727(a)(3). Macway does not argue that the U.S. Trustee did not have standing to assert its § 727(a)(3) claim. With the matter properly before it, a bankruptcy court is perfectly capable of determining, in its discretion and without the assistance of testimony from actual creditors or investors, that a debtor "failed to maintain and preserve adequate records," that said failure "rendered it impossible to ascertain the debtor's financial condition and material business transactions" and that debtor failed to "justify the inadequacy or nonexistence of records." *See Hussain*, 508 B.R. at 423-24.

Similarly, the U.S. Trustee was not required to present a "comparable syndicate player to testify as to how records should be kept." (Dkt. no. 6 at 8.) The Court reviews this issue *de novo* and finds that such a requirement would be a misapplication of the relevant legal standard. In support of his position that such testimony is required, Macway cites to *Gross v. Russo (In re Russo)*, 3 B.R. 28, 34 (E.D.N.Y. 1980), which stated that "justification for a bankrupt's failure to keep or preserve books or records will

depend on the extent and nature of his transactions and whether others in like circumstances would ordinarily keep them." However, the *Russo* court was analyzing the portion of § 727(a)(3) that asks whether failure to keep or preserve books or records is "justified under all of the circumstances of the case[.]" *Id.* The *Russo* court had already concluded that the debtor "failed to keep or preserve books or records from which his financial condition and business transactions might be ascertained" before the court even reached Macway's cited analysis. *Id.* Under the relevant legal standard in the Ninth Circuit, once it is shown that debtor "failed to maintain and preserve adequate records" making it "impossible to ascertain the debtor's financial condition and material business transactions," as the *Russo* court had already determined, the burden is then on the *debtor* to "justify the inadequacy or nonexistence of records." *See Hussain*, 508 B.R. at 423-24. The U.S. Trustee was not obligated, under this legal standard, to affirmatively present the testimony of another "syndicate player" that kept better records. Macway certainly had the opportunity, and indeed the burden, to justify the inadequacy or nonexistence of his records. He decided to rely on his own testimony and not call any witnesses. (*See* dkt. no. 8 at 24.)

Macway challenges the bankruptcy court's factual finding that Macway's "recreated list of members including amounts invested or loaned" was inaccurate. (Dkt. no. 6 at 8.) Specifically, the bankruptcy court found that it "was not persuaded that this list was totally accurate." (Dkt. no. 6, Exh. A at 6.) The Court determines that this factual finding is supported by the record and not clearly erroneous. Macway testified that he created the list after bankruptcy was filed, and in large part from his memory. (Dkt. no. 9, Exh. F at 34-37.) The time between when he began the Syndicate and when he filed for bankruptcy was approximately eight (8) years. (Dkt. no. 6, Exh. A at 2, 6.) He also testified that he received a lot of the Syndicate's money in cash and put it directly into gambling without first placing it in a bank account. (*Id.* at 46-47.) Of approximately thirty (30) Syndicate partners on the recreated list, Macway could only produce notes and certificates for eight. (*Id.* at 49-50.) Given the reliance on memory of events that occurred

up to eight years prior, and the lack of bank records and documentation to support the recreated list, it was entirely permissible for the bankruptcy court to find that it was not persuaded as to the list's complete accuracy.

Macway further challenges the bankruptcy court's finding that "win-loss" records kept by the casinos and provided by Macway are "less credible" because they were not maintained by Macway. (Dkt. no. 6 at 9.) The bankruptcy court made no such finding of credibility. The bankruptcy court found that the win-loss statements, along with the other records produced, "do not allow one to ascertain [Macway's] financial condition or his business transactions for a reasonable time" is supported by the record and not clear error. (*See* dkt. no. 6, Exh. A at 9.) The Court determines that this factual finding is supported by the record and not clearly erroneous. Macway testified that every casino prepares win-loss statements in different ways, (dkt. no. 8, Exh. G at 91), that the win-loss statements did not reflect income from tournament wins, (*id.* at 94-95), and that the win-loss statements do not reflect income when he uses his wife's player tracking card (*id.* at 96). Macway recognized that due to the inaccuracies of the win-loss statements resulting from his switching of player tracking cards, he would have to go back and amend prior tax returns. (*Id.* at 136-37.) Joseph Pane, a fellow advantage gambler and investor in the Syndicate, also testified that players can "rat-hole" chips so that it appears to the casino as though the player is not winning. (*See id.* at 20; dkt. no. 8 at 20.) He testified that Macway would engage in this practice. (*Id.*) In light of the varying ways in which the win-loss statements are prepared and their failure to reflect income earned from tournaments, from gambling under a different player tracking card and from rat-holing chips, it was permissible for the bankruptcy court to find that these statements were insufficient to allow one to ascertain reliable financial information.

Finally, Macway argues that the bankruptcy court's denial of the U.S. Trustee's claim pursuant to § 727(a)(5) was sufficient to defeat the U.S. Trustee's claim under § 727(a)(3) as well. (Dkt. no. 6 at 9-11.) 11 U.S.C. § 727(a)(5) states that the bankruptcy court shall grant a discharge unless "the debtor has failed to explain satisfactorily, before

determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]" The bankruptcy court found Macway's testimony that he gambled the money away to be "probably correct" and satisfactory for the purposes of § 727(a)(5). (Dkt. no. 6, Exh. A at 12.) Macway argues, without support of legal authority, that it is "conceptually inconsistent" for the bankruptcy court to find that Macway's testimony was "sufficient to convince it that the money had been gambled away" but "insufficient for creditors to ascertain [Macway's] financial condition or business transactions." (Dkt. no. 6 at 11.) The Court disagrees. Macway's testimony that he gambled the money away does not absolve him of his "affirmative duty" to keep and preserve records. *See Caneva*, 550 at 762. As the Court stated previously, the "purpose of § 727(a)(3) is to make discharge dependent on the debtor's true presentation of his financial affairs." *Cox*, 904 F.2d at 1401. The mere fact that he lost the Syndicate's money gambling does not reveal, among many things, the transactions through which that money was lost or the amount contributed by each creditor and investor. The Court finds this argument is without merit.

Based on the evidence, the bankruptcy court did not err in concluding that the records produced by Macway "do not allow one to ascertain [Macway's] financial condition or his business transactions for a reasonable time. (Dkt. no. 6, Exh. A at 9.) Macway is a smart man, with an MBA and a history of keeping personal and financial records. (*Id.* at 5.) Yet with nearly half a million dollars from investors and lenders lost though his gambling enterprise, Macway could not produce any original records, a gaming diary or log, records of any repayments to the Syndicate, or records of money reinvested. (*Id.* at 7-8.) The best Macway could provide is a list from memory of events dating back to eight (8) years and win-loss statements that are prone to inaccuracies. Macway failed to present evidence, in order to justify his insufficient records, that gamblers conducting a gambling business with others' money also rely on win-loss statements and don not ordinarily keep records. (*Id.* at 11.)

///

**IV.   CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion or reconsideration as they do not affect the outcome of this appeal.

It is therefore ordered that the bankruptcy court's judgment denying Macway's bankruptcy discharge pursuant to 11 U.S.C. § 727(a)(3) is affirmed.

DATED THIS 4th day of August 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE